UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **WAVETRONIX LLC,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | CIVIL NO. 1:24-CV-00190-ADA-DTG |
| § | |
| **ITERIS, INC.,** § | |
| § | |
| **Defendant.** § | |
| § | |

**ORDER DENYING DEFENDANT'S DAUBERT MOTION TO EXCLUDE THE REPORT AND OPINIONS OF BARRY BELL (ECF NO. 162)**

Before the Court is Defendant's *Daubert* Motion to Exclude the Report and Opinions of Barry Bell (ECF No. 162). After a thorough review of the briefs and arguments of counsel at the May 21, 2024, motions hearing, the Court orally **DENIED** the Motion. This order memorializes that ruling for the record.

Defendant seeks to strike Mr. Bell's opinions on irreparable harm. Defendant contends that Mr. Bell "ignores the entirety of financial information from both parties, relies mostly on hearsay from Wavetronix employees, [] [which] results in unreliable, speculative testimony that should be excluded. . . and Mr. Bell's testimony on the traffic industry should be excluded as Mr. Bell admits he is not a traffic industry expert." ECF No. 162 at 1. Bell's conclusion in his report is that Plaintiff has suffered irreparable harm:

> 62. The harm to Wavetronix caused by Iteris's alleged breach of the settlement agreement is obvious, but the determination of the amount of such harm defies quantification. An evaluation of lost profits, for example, would require a customer-by-customer or project-by-project analysis involving a review of information that is not publicly available, much of which is not accessible to Wavetronix, and some of which is likely unknowable. Such an analysis would be necessarily incomplete, and—even to the extent it could be done—would be cost prohibitive. I understand that in such cases, i.e., cases in which "it would be extremely difficult or impossible to calculate the loss in sales that would be

> suffered," a finding of irreparable harm and the application of equitable remedies are appropriate.
>
> 63. Through its sale of the Vantage Vector product, Iteris has won bids on projects that, but for Iteris's alleged breach of contract, Wavetronix would have won. Additionally, Iteris's alleged improper conduct has led actual and/or potential Wavetronix customers to understand that Iteris also can provide CMF-based dilemma zone protection products. As a result, Wavetronix has suffered lost profits and harm to its reputation and goodwill due to Iteris's alleged breach of the settlement agreement. However, for at least the reasons discussed above, the quantum of those lost profits and harm to reputation and goodwill cannot be calculated to a reasonable degree of certainty. Therefore, Wavetronix has suffered harm that cannot be adequately addressed with an award of damages.

Expert Report of Barry Bell (ECF No. 162-1) at 25.

Mr. Bell's irreparable harm opinions fall into three categories. First that Plaintiff suffered unquantifiable lost profits due to lost sales. Second that Plaintiff suffered potential lost profits due to price erosion. Third and finally, that Plaintiff suffered harm to its reputation and goodwill. ECF No. 162 at 6.

As this Court has noted in other *Daubert* Orders in this case, an expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education," and the testimony must "help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). Under *Daubert*, expert testimony is admissible if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Defendant challenges the entirety of these opinions as not being based on sufficient facts or reliable methodology. Defendant contends that Mr. Bell did not consider the financial information provided in discovery. It argues that he merely parrots hearsay information provided by Plaintiff's employees. Finally, he provides testimony about the nature of the traffic industry

that should be excluded because Mr. Bell is not a traffic engineer. ECF No. 162 at 6-9; ECF No. 149 at 1. The Court addresses each criticism in turn.

1. **Mr. Bell's Opinion is Based on Sufficient Factual Data Despite the Fact that he Did Not Consider All Financial Data**

Defendant contends that Mr. Bell simply ignored the financial data and Plaintiff's competitive sales information that was produced in the case. ECF No. 162 at 6. Defendant argues that both parties produced substantial financial information in discovery, yet Mr. Bell testified that he reviewed none of it in preparing his report. Rather, Mr. Bell claims that it would have been impossible to prove Plaintiff's financial loss with reasonable certainty. ECF No. 162-1 at ¶ 56. Defendant counters that he simply did not try, and because he ignored the financial and competitive sales data maintained by the parties, his testimony is therefore wholly unreliable and untied to the facts in this case. ECF No. 162 at 6.

The Court is persuaded that Plaintiff has met its burden of demonstrating the reliability and admissibility of Mr. Bell's testimony on this point. There is no dispute that Mr. Bell possesses the education, experience, or training to give this opinion. ECF No. 149 at 4. Mr. Bell opines that a causal nexus cannot be established between Defendant's breach of contract and Plaintiff's loss of sales. ECF No. 149 at 8. As such, he is unable to calculate lost profits. ECF No. 149 at 1. Mr. Bell has adequately identified a litany of factors to explain how Plaintiff might lose sales, and based on his experience and education, explains why he is unable to establish a but-for causal link between an identified lost sale and Defendant's breach of the contract. ECF No. 149 at 8-9. Plaintiff argues that, once Bell established that the required but-for causal nexus could not be shown with a reasonable certainty, the financial information (provided by either party) "became irrelevant." ECF No. 149 at 13.

Under Texas law, "lost profits are recoverable as damages only if they can be proven 'with reasonable certainty.'" *Tex. Instruments v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 278–79 (Tex. 1994). "What constitutes reasonably certain evidence of lost profits is a fact-intensive determination." *Id*. at 279. At bottom, however, "opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 876 (Tex. 2010).

The fact that Mr. Bell didn't consider the parties' financial information does not render Bell's opinion unreliable or untethered to the facts of the case. Mr. Bell has adequately explained why he cannot establish a but-for causation to establish which sales Plaintiff lost due to Defendant's breach of the contract with the "reasonable certainty" as required by the law. *See also* ECF No. 149 at 13-14. Reviewing financial information would not change his analysis. Bell has established that a review of Plaintiff's internal competitive sales information would be insufficient, as Plaintiff is unable to track all lost sales opportunities, and cannot know about all sales it may have lost with third-party dealers. ECF No. 149 at 12. Similarly, a review of Defendant's profits and losses would not alter Mr. Bell's opinion that the threshold but-for causation cannot be determined. *Id*. at 14. Many of the factors that Mr. Bell uses to form his opinion—such as product features and competitor products—are not found within the confines of financial documents.

Defendant's sole citation to *360 Mortgage Group* is unpersuasive. In that case, the Plaintiff's expert was found unreliable because his lost profits analysis failed to include, among other things, data that the Court had already informed the parties was most relevant. *See 360 Mortg. Group, LLC v. Homebridge Fin. Services, Inc.,* No. A-14-CA-00847-SS, 2016 WL 6075566, at *3 (W.D. Tex. Apr. 22, 2016). The Court held that such a selective use of facts

failed to satisfy the *Daubert* standard. Here, Mr. Bell could not even get to a lost profit analysis, and Defendant has not shown how consideration of the financial information would have altered Bell's analysis. Defendant's complaints on this point go toward weight, rather than admissibility of the opinion, especially as this case is going to be tried to the court and not a jury. Defendant is free to cross-examine Mr. Bell on what he considered in forming his opinions, but the Court does not find Mr. Bell's opinion lacking the hallmarks of reliability or insufficient use of data.

   **2. Mr. Bell's Reliance on Plaintiff's Employee Interviews Does not Render his Opinion Unreliable**

Defendant also argues that instead of reviewing Plaintiff's competitive sales information produced in the case, which show some lost sales, Bell bases his opinion on hearsay—conversations with two of Plaintiff's employees—making his opinion unreliable. ECF No. 61 at 6. Defendant says Mr. Bell is just parroting what the employees told him, packaged as expert testimony. *Id*. As this Court has held above, Mr. Bell's choice to not consult Plaintiff's competitive sales information does not render his opinion inherently unreliable. Furthermore, Mr. Bell is not simply regurgitating the testimony of Plaintiff's two employees, which could be excluded as hearsay. Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mut. Ins. Co. v. Alon USA L.P.,* 705 F.3d 518, 524 (5th Cir. 2013) (citations omitted). That is not the case here. Mr. Bell interviewed the witnesses on facts that could not be ascertained through a review of financial documents. These witnesses provided information about several of the factors that Mr. Bell took into account in forming his opinion, including the third-party dealer structures Plaintiff uses, the marketplace for the products at issue, and Plaintiff's position in the marketplace.

It is entirely appropriate for an expert to interview employees in forming an opinion. *See e.g. Better Holdco, Inc. v. Beeline Loans, Inc.,* 666 F. Supp. 3d 328, 355 (S.D.N.Y. 2023). Whether Mr. Bell considered the interviews of employees to the detriment of other data goes to the weight of his testimony and can be addressed on cross-examination. *See id.* (holding that "complain[ts] that [the expert] should have looked at Better's actual data rather than obtaining information from interviewing employees" goes "to the weight and not the admissibility of his proffered testimony.").

### 3. Mr. Bell's Opinions on Harm to Reputation and Price Erosion are not Unreliable

Defendant also objects to Mr. Bell's brief opinions on price erosion and reputational harm as speculative because he relies only on interviews with Plaintiff's employees. ECF No. 162 at 8-9. As noted above, reliance on Plaintiff's employees is not a basis for exclusion of Mr. Bell's opinions. Furthermore, Mr. Bell did not rely solely on their testimony. He also relied on testimony of the parties' witnesses and his experience as an economist when formulating his final opinions on these topics. These criticisms go to the weight of the testimony and not its admissibility. The Court does not find the opinions to be unreliable or speculative.

### 4. Mr. Bell's Statement on the "Complex" Traffic Industry is not Objectionable

Defendant takes issue with Mr. Bell opining that the marketing and sales process in the traffic industry is "complex," because he is not an expert in the traffic industry. ECF No. 162 at 9. The Court does not find Mr. Bell's terminology objectionable, particularly because he simply relied on publicly available information to inform his opinions, which are economic in nature and not technical. ECF No. 149 at 17.

## CONCLUSION

Defendant's Motion to Exclude the Opinions of Mr. Bell (ECF No. 162) is **DENIED**.

SIGNED this 12th day of September, 2024.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE